[Cite as *In re T.C.*, 2017-Ohio-123.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

IN THE MATTER OF:  T.C.

 

C.A. CASE NO.   2016-CA-22

T.C. NO. D46134

(Civil Appeal from Common
 Pleas Court, Juvenile Division)

. . . . . . . . . . .

## O P I N I O N

Rendered on the ___13th___ day of _____January_____, 2017.

. . . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
     Attorney for Plaintiff-Appellee

STEVEN H. ECKSTEIN, Atty. Reg. No. 0037253, 1208 Bramble Avenue, Washington Court House, Ohio 43160
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} T.C. appeals from a judgment of the Greene County Court of Common Pleas, Juvenile Division, which found him delinquent for having committed rape.  For the following reasons, the judgment of the trial court will be affirmed.

{¶ 2} On December 4, 2014, a complaint was filed which alleged that T.C. had

committed rape in November or December 2012, in violation of R.C. 2907.02(A)(1), an offense which would be a felony of the first degree if committed by an adult.   T.C. had been 14 or 15 years old, and the victim, L.C., who was T.C.'s nephew, was four or five years old at the time of the alleged offense.   The court entered a denial on T.C.'s behalf. On March 2, 2015, the State filed a motion to determine L.C.'s competence, because L.C. was under the age of 10.   After a hearing and an interview with L.C., the court concluded that he was competent to testify.

{¶ 3}   A hearing was held on January 14, 2016, at which several people testified, including T.C., L.C., their mothers, and a detective.   After the hearing, the trial court concluded that T.C. had committed rape and found him delinquent on that basis.   The court ordered him to be committed to the Department of Youth Services for a period of at least 12 months and possibly extending until his 21st birthday, and it classified him as a Tier II sex offender.

{¶ 4}   T.C. raises one assignment of error on appeal, which challenges the sufficiency and weight of the evidence supporting his adjudication.   He does not challenge the trial court's finding that L.C. was competent to testify; he simply argues that the trial court should not have believed L.C.'s testimony and that of other witnesses.

{¶ 5}   An argument based on the sufficiency of the evidence challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would

convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 6} When reviewing an argument challenging the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 7} The trial court adjudicated T.C. to be delinquent based on its finding that he had committed rape as defined in R.C. 2907.02(A)(1)(b), which consists of sexual conduct with another, when the other person is less than thirteen years of age. Sexual conduct means, in pertinent part, "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex." R.C. 2907.01(A).

{¶ 8} Three witnesses testified for the State at the hearing: L.C., his mother (Mother), and Detective Matt Miller of the Xenia Police Division. T.C, T.C.'s mother (who was also L.C.'s grandmother and will be referred to as Grandmother), and one of Grandmother's boyfriends testified for the defense.

{¶ 9} L.C. testified that his grandmother and T.C. had stayed with his family for a

short time one or two years earlier. During this period, L.C.'s mother had left him alone with T.C. on one occasion, while she went to a gas station to get cigarettes. L.C. testified that Grandmother had left the house before Mother on the night in question, and that his father had been at work.

{¶ 10} During the adults' absence, T.C. suggested that he and L.C. "play a game." T.C. told L.C. "to touch his [T.C.'s] privates and to suck his privates." This "game" occurred in L.C.'s room, once by the door to the room and once by the closet door, but during the same short timeframe while Mother was at the gas station. L.C. described using his hand and mouth to "touch" and "suck" T.C.'s "weenie." When presented with a picture of an unclothed boy, L.C. identified the "weenie" and "butt" and circled the portion of T.C.'s body that he (L.C.) had touched. L.C. described T.C.'s "weenie" as "hairy," stated that both boys had their pants down during the incident, and recalled that T.C. had touched L.C.'s "privates" too. According to L.C., the incident did not take very long, and he did not tell his mother when she returned from the gas station. L.C. told his mother about the incident one or two years later.

{¶ 11} L.C.'s mother (Mother) testified that her brother, T.C., and their mother, (Grandmother), lived with Mother, Mother's boyfriend, and L.C. in November and December 2012. However, Grandmother was "mainly" staying with her boyfriend, and T.C. was staying with Mother at night. Mother testified that she left L.C. with T.C. one time, when she went to get cigarettes and did not want to take L.C. out in the cold. T.C. was 14 years old at the time and "more than capable," in Mother's opinion, of watching L.C. Mother drove two miles to a gas station and was gone for five to ten minutes. L.C. did not report any problem when she returned.

**{¶ 12}** Mother testified that L.C.'s speech had been delayed when he was younger due to weak muscles in his mouth and tongue and that, at age 3, "he was having a hard time talking." L.C. did not complete full sentences until he was in kindergarten, but the speech issues had since been resolved through therapy. Mother did not learn that "something sexual" had happened between T.C. and L.C. until 2014, when she saw L.C. coming out of some woods near their home with a "little boy" from the neighborhood, and L.C.'s pants were "down" or "unbuttoned." During a conversation that followed, Mother learned of the incident with T.C. Mother did not go to the police and "did not know what to do," considering that her brother was the alleged abuser. The police became involved sometime later, after Mother had been contacted by L.C.'s school about allegations that he had been sexually abused.

**{¶ 13}** Detective Miller received information, apparently from L.C.'s school and/or Children Services, that L.C. may have been "sexually assaulted" by T.C. over a period of time. Miller testified that he contacted L.C., took him to Michael's House for an interview with a forensic interviewer trained to work with juveniles, and watched the interview from another room. Detective Miller testified that L.C. had generally confirmed the reports of abuse.

**{¶ 14}** Detective Miller also interviewed T.C. in the presence of his mother, Grandmother. Miller testified that T.C. provided "very short, I-didn't-do it answers," denied ever having been alone with L.C. at Mother's house, and denied any sexual contact or conduct with L.C. Miller testified that no physical evidence was collected because two years had passed between the alleged assault and its reporting.

**{¶ 15}** Grandmother testified that she and T.C. moved in with Mother and L.C. on

November 17, 2012 and stayed for a couple of weeks; she stated that she and T.C. moved in with her boyfriend on December 1. She testified that T.C. and L.C. had never been left alone at Mother's house and that neither Mother nor her fiancé had an operable car during the time that Grandmother stayed with Mother. Grandmother stated that Mother had occasionally gone to the gas station to get cigarettes in Grandmother's car, but that she (Grandmother) had always been home at those times. Grandmother further testified that L.C. had slept in the bedroom with Mother and her fiancé while Grandmother and T.C. stayed with them, and Grandmother had heard Mother and her fiancé having sex while L.C. was in the room.

{¶ 16} Grandmother further testified that T.C. turned 15 years old while they were staying with L.C. and Mother. Grandmother testified that T.C. was never left home alone during this time, because "I take care of my son" and "I'm all [T.C.] has." Grandmother acknowledged that, when T.C. initially "denied the lie detector test," she had wondered whether the allegations made by L.C. were true. But, later, after she learned that her father had told T.C. not to take a lie detector test, she became convinced that L.C. was lying.

{¶ 17} T.C. testified that he had never been alone with L.C. while he and Grandmother lived with L.C.; Grandmother had always been present. T.C. stated that he had not pulled down his (T.C.'s) pants in L.C.'s presence or asked L.C. to "touch" or "suck" his "privates." With respect to his interview with Detective Miller and Miller's characterization of his answers as "short," T.C. did not recall giving short answers and stated that, when he said he "didn't do it," "that was a complete answer to the detective's questions." T.C. believed that L.C. was lying because "he [L.C.] always lied when he

was little," including making accusations to Mother that T.C. had "smacked" him.

**{¶ 18}** T.C. further testified that there was no occasion during November or December 2012 when he was alone with L.C. while Mother went to get cigarettes. He asserted that Mother did not have a car during that time and that, if she had gone to the gas station, it would have been in Grandmother's car, and Grandmother would have remained at home with him and L.C. T.C. also testified that he was 14 or 15 years old at the time of the alleged rape, that he did not go through puberty until he was 16, and that his penis was not "hairy" in 2012, as described by L.C.

**{¶ 19}** The State's evidence was sufficient to sustain the trial court's finding that T.C. had raped L.C. L.C.'s testimony, if believed, established all of the elements of rape and established that he (L.C.) had been raped by T.C. Thus, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

**{¶ 20}** With respect to the weight of the evidence, T.C. argues that L.C.'s testimony should not have been believed because, when L.C. came forward with his allegations, L.C. was "in trouble with his mother for committing sexual acts with [another] boy." He also contends that it was "far-fetched" to believe that Mother recalled two years later leaving L.C. alone with T.C. while she went for cigarettes - an event that would have been unremarkable at the time – and emphasizes the ambiguity in the record about who had reported the crime to the police. T.C. states that neither L.C. nor Mother reported the crime, "the only two people who knew of the alleged incident!"

**{¶ 21}** T.C.'s suggestion that L.C. had committed "sexual acts" with another child, for which he was "in trouble" when the alleged incident with T.C. came to light, finds limited

support in the record. Mother testified that, sometime in 2014, she observed L.C. coming out of the woods behind their home with another "little boy," and that L.C.'s pants were "down" or "top of his pants was unbuttoned." This observation prompted a conversation with L.C. during which Mother first "became aware of sexual acts that had occurred" between L.C. and T.C. Although Mother's observations apparently led her to ask L.C. about sexual activity, no evidence was presented that L.C. was "in trouble" or had been accused of sexual acts against another child. Mother did not call the police, because she "didn't know what to do," particularly in light of the familial relationships involved, but she did cooperate with the police when they contacted her in response to "an allegation at the school stating that my son [L.C.] was being molested." No details surrounding how the police came to investigate the incident between T.C. and L.C. are included in the record.

{¶ 22} Questions about the credibility of the witnesses were for the trial court to resolve. The trial court appears to have credited the testimony of L.C. and Mother, specifically L.C.'s description of the sexual conduct, his ability to identify the body parts involved, and his description of T.C.'s penis, as these are specifically referenced among the findings of fact. It also specifically found that Grandmother's testimony was not credible insofar as it related to Mother and her fiancé having sex while L.C. was in the room and Grandmother's never having left her teenage son (T.C.) alone.

{¶ 23} To reverse a conviction based on the manifest weight of the evidence requires more than a determination that the evidence was strong or weak. Based on the evidence presented and the trial court's assessment of the witnesses' credibility, we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage

of justice in finding that T.C. had committed rape.

**{¶ 24}** The assignment of error is overruled.

**{¶ 25}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . .

DONOVAN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Nathaniel R. Luken
Steven H. Eckstein
Hon. Adolfo A. Tornichio